NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUIDO V.,<br>　　　　　　　　Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　　　Defendant. | Civil Action No.: 23-22953<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

### I.　INTRODUCTION

Before the Court is the appeal of Guido V.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act ("SSA" or the "Act"). ECF No. 1; *see also* ECF No. 10 ("Br."). Defendant opposed the appeal (ECF No. 14, "Opp."). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

### II.　BACKGROUND

Plaintiff is a 64-year-old man and has completed three years of college. ECF No. 4 ("R.") at 185, 189. He previously worked as a senior account executive. R. at 189.

On July 19, 2021, Plaintiff completed an Adult Function Report stating that despite difficulties with lifting and walking, he was still able to perform daily activities like showering, making breakfast, listening to the news, using the internet, and oil painting. R. at 196. He reported

---

[1]　Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

1

sleep difficulties due to leg pain but had no trouble with personal hygiene or taking medication. *Id*. He prepared meals twice a week, mowed his lawn, went outside every other day, and drove independently. R. at 196-98. Despite memory issues, he shopped twice a week and managed his finances. R. at 198. He enjoyed hobbies like oil painting and music and attended family reunions monthly. R. at 199.

Plaintiff filed for DIB on April 28, 2021, alleging disability beginning on February 14, 2021. R. at 174-75. His application was denied initially, R. at 97-101. Plaintiff then requested a hearing before an ALJ to review the application de novo. R. at 109. A hearing was held on March 9, 2022, R. at 38-73, before ALJ Donna A. Krappa. At the hearing, the ALJ notified Plaintiff that his attorney had withdrawn from the case. R. at 40-41. The ALJ offered Plaintiff an adjournment along with phone numbers of organizations that Plaintiff could contact for another attorney, R. at 41, and explained to Plaintiff the role of an attorney in these types of proceedings, R. at 43-44. After the ALJ made Plaintiff aware of his options and his right to representation, Plaintiff decided to proceed without an attorney. R. at 44.

During the hearing, Plaintiff testified that he was diagnosed with coronary heart disease, high cholesterol, and high blood pressure, and had a triple bypass in 2015. R. at 47. He testified that he experiences dizziness and knee pain which affects his ability to walk. R. at. 48, 52-53. Plaintiff reported his corticosteroid injection and knee wraps helped him walk. R. at 53. He claimed to have problems with standing and sitting for long periods but has no trouble lifting. R. at 53-54. Plaintiff reported that he takes medication for high cholesterol, high blood pressure, and to prevent blood clots. R. at 56. He is able to take a shower, get dressed, and make a meal, and has continued applying for jobs. R. at 56-57. Plaintiff also testified that he sometimes provides care for his handicapped son. R. at 59.

Following the hearing, the ALJ issued a decision on August 18, 2022, denying disability. R. at 25. The Appeals Council denied Plaintiff's request for review of that decision, rendering the ALJ decision final. R. at 1-6. Plaintiff then brought the instant appeal on December 7, 2023. ECF No. 1.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C. Sequential Evaluation for a Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four of this test. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

IV.   **DISCUSSION**

    **A. Summary of the ALJ's Decision**

After considering the evidence and following the five-step analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ found that Plaintiff was not disabled during the relevant period. R. at 33.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. at 27.

At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease (status post triple bypass); hypertension; a disorder of the left knee; and obesity. R. at 27-28.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. R. at 29.

The ALJ then determined that Plaintiff had an RFC to:

> perform light work as defined in 20 CFR 404.1567(b). Specifically, he is able to: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, the claimant is able to perform jobs: that require only occasional use of ladders, ropes, or scaffolds; and that require frequent (as opposed to continuous) use of ramps or stairs. The claimant is able to perform frequent balancing, but only occasional stooping, kneeling, crouching, and crawling.

R. at 29-30.

At step four, the ALJ determined that Plaintiff could perform past relevant work as an advertising sales representative, crediting the testimony of the vocational expert. R. at 32-33.

At step five, the ALJ found that, considering Plaintiff's RFC and the testimony of the vocational expert, there were jobs that existed in significant numbers in the national economy that

Plaintiff could have performed. R. at 33. Accordingly, the ALJ determined that Plaintiff was not disabled during the relevant period. R. at 33.

### B. Plaintiff's Arguments on Appeal

Plaintiff puts forth three arguments in the instant appeal. Plaintiff argues that the ALJ did not elicit an informed waiver of representation from Plaintiff and that the ALJ failed to observe the enhanced duty owed to unrepresented claimants. Plaintiff also claims that the ALJ's step three analysis was lacking because it did not provide sufficient explanation for its conclusions and failed to adequately consider Plaintiff's obesity. Plaintiff further contends that the decisional RFC was not supported by substantial evidence. Each argument will be discussed in turn.

#### a. Informed Waiver of Representation

Plaintiff knowingly and intelligently waived his right to counsel and was not prejudiced by his lack of counsel at the administrative hearing. The Third Circuit has noted that although a claimant must be provided with notice of his right to counsel, the claimant can waive his right to counsel if the waiver is knowing and intelligent. *See Phifer ex rel. Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 190-91 (3d Cir. 2003). A waiver alone is not a sufficient justification for remand. Instead, remand is proper only where the lack of counsel prejudices a claimant or where the lack of counsel leads to an administrative proceeding marked by unfairness. *See Livingston v. Califano,* 614 F.2d 342, 345 (3d Cir. 1980).

The Third Circuit has analyzed whether waiver of counsel is knowing and intelligent under the Seventh Circuit's standard, which requires ALJs to explain to *pro se* claimants "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Vivaritas v. Comm'r of Soc. Sec.,* 264 F. App'x 155, 157 n.1 (3d Cir.

2008) (finding that the claimant knowingly and intelligently waived the right to representation where the ALJ explained to the claimant his options to proceed without representation and the claimant confirmed on the record that he voluntarily elected to proceed without an attorney). All three of these requirements were met in this case. First, the ALJ explained in detail the way an attorney can aid the proceedings:

> So let me explain to you like what a lawyer does for you. What they would do is they collect the evidence that's outstanding on your behalf, like if there are any medical records from treating doctors or pharmacy records, things like that. Then they spend some time talking to you about your case so that you could put forward your best, you know, your best case as to why you can't work. If there are other people in your life that may want to testify on your behalf, they might spend some time talking to them, too, and see if they want to testify. So, you know, they have experience putting these cases together and putting them forth in the best possible light.

R. at 43-44. Second, the ALJ explained to Plaintiff that he could reach out to legal services organizations that could represent him and even offered to provide contact information for such organizations. R. at 41 ("So, you do understand that I could give you an adjournment and I could give you phone numbers of organizations that you could contact about getting another attorney"). And third, the ALJ specifically mentioned the limitation on attorney fees to 25 percent of past due benefits. R. at 41 (informing Plaintiff that "the lawyer would get 25 percent of any back benefits").

After the ALJ provided Plaintiff with all of this information, Plaintiff voluntarily decided to proceed without an attorney. R. at 44 ("Okay, I take the chance to go with you today."). As such, Plaintiff's decision to waive counsel was knowing and intelligent.

8

Regardless, Plaintiff has failed to demonstrate that he was prejudiced by his decision to waive representation for the hearing. The ALJ developed the record, reviewed the entirety of the relevant medical evidence, including Plaintiff's treatment records, consultative examinations, and the prior administrative medical findings of multiple state agency experts, and issued a decision R. at 70-71, 22. The Third Circuit has explained that a claimant fails to show prejudice when, as here, an ALJ develops the record and makes a decision based on a complete record. *See Phifer*, 84 F. App'x at 191 (noting that the plaintiff was not prejudiced by lack of counsel where "the ALJ made efforts to develop the record fully"). Additionally, Plaintiff's argument that the ALJ refused to ask him whether he had anything he would like to say that was not asked by the ALJ is not supported by the record. Pl. Br. at 49-50. Before questioning the vocational expert, the ALJ specifically asked Plaintiff, "so is there anything else about your situation that we didn't discuss that you think I need to know?" R. at 62. The ALJ later repeated this question before closing the hearing. R. at 71. The ALJ's questioning of the vocational expert was also thorough, R. at 63-68, and often incorporated Plaintiff's own description of his limitations. R. at 65 ("Q: Okay. So let's assume because of the problem with the knee, he's limited to only four hours of standing and walking. How does that affect the job?"). Indeed, Plaintiff does not appear to present any additional questions he would have asked the vocational expert about.

Accordingly, Plaintiff's waiver of counsel was knowing and voluntary, and he was not prejudiced by a lack of counsel.

    b. <u>Step Three Analysis</u>

Plaintiff also argues that "[t]he step 3 medical equivalence finding is offered without evidence, analysis, comparison or combination of impairments." Pl. Br. at 6. But the ALJ considered, at step three of her decision, Plaintiff's impairments both alone and in combination,

and substantial evidence supports her finding of medical equivalence under the listings. R. at 29. Specifically, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. R. at 29. The ALJ explained that the "medical evidence of record does not consistently document signs, symptoms, or laboratory findings indicating any impairment *or combination of impairments* severe enough to meet the criteria of any listed impairments." R. at 29 (emphasis added). The ALJ further noted that "[n]o treating, examining, or non-examining medical source has rendered an opinion that the claimant's impairments, singly or in combination, medically equal the criteria of any listed impairment." R. at 29. Contrary to Plaintiff's arguments, the ALJ also sufficiently considered Plaintiff's obesity in accordance with SSR 19-2p and considered Listing 1.18 Abnormality of a major joint(s) in any extremity and Listing 4.04 Ischemic heart disease. R. at 29 ("The undersigned has also considered the claimant's obesity in accordance with SSR 19-2p.").

Plaintiff argues that the ALJ's step three analysis is lacking because it does not provide a detailed explanation of why each listing is not met; but the ALJ does not have a heightened duty of explanation with respect to evaluating medical equivalency under the listings. To the contrary, SSR 17-2p states that if an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306 at *4. Instead, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* This is because the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the

10

sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.* Here, the ALJ's statement that "the medical evidence of record does not consistently document signs, symptoms, or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment," R. at 29, satisfies the articulation requirement set forth in SSR 17-2p.

In short, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments at step three, and her explanation for her findings was sufficient and satisfied the articulation requirement set forth in SSR 17-2p. The ALJ also evaluated Plaintiff's obesity in accordance with SSR 19-2p and provided sufficient explanation in her decision to permit meaningful judicial review.

        c.   RFC Determination

Finally, Plaintiff argues the ALJ's "decisional RFC is offered without reason or rationale and is very apparently at odds with the substantial medical evidence of record." Pl. Br. at 26. The Court finds that the ALJ adequately explained the basis for her RFC assessment and that this assessment is supported by substantial evidence from the record. The ALJ considered the totality of the record, including objective medical findings, Plaintiff's self-reports to the agency, his activities of daily living, and prior administrative medical findings to arrive at the RFC for light work. R. at 29-30.

Specifically, the ALJ considered Plaintiff's allegations, noting his complaints of coronary artery disease and left knee pain, and its effects on his ability to lift, stand, walk, squat, kneel, and climb stairs. R. at 30. The ALJ also found that, although impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and

11

limiting effects of his symptoms were not entirely consistent with medical evidence and other evidence in the record. R. at 30. For instance, there was little evidence of continuing treatment for his various complained of conditions. R. at 30-31. The ALJ noted that Plaintiff had not seen a cardiologist for three years as of August 2021 (R. at 31, citing R. at 1150), and at his prior appointment in July 2021, Plaintiff had no chest pain, palpitations, or shortness of breath (R. at 31, citing R. at 1149). Dr. Merlin performed a consultative examination and noted that Plaintiff had regular heart sounds with no murmur, gallop, or friction rub. R. at 31, citing R. at 1131. Plaintiff also had a normal gait and station, no difficulty getting on and off the exam table, unimpaired grasping strength and manipulative functions, could flex his spine 90 degrees, squat, and walk on his heels and toes. *Id.* The ALJ also noted that Plaintiff had a corticosteroid injection to his left knee, which improved his symptoms. R. at 31-32.

      The ALJ also walked through the opinion evidence that supported her finding and noted that both Drs. Simpkins and Sobelman concluded that Plaintiff could perform work at the light exertional level. R. at 32. The ALJ found both opinions persuasive because they were well-supported and consistent with findings of Dr. Riggi, Dr. Pecker, Dr. Barsky, and Dr. Merlin. *Id.* The ALJ noted that most examinations showed that Plaintiff had a normal gait, normal strength, and his cardiac examination yielded essentially normal results. *Id.* The ALJ also made sure to consider Plaintiff's obesity and noted that Plaintiff's obesity was at the low range of obesity under medical guidelines and that no physician had labeled his obesity as disabling. *Id.* The ALJ underscored that despite Plaintiff's obesity, Plaintiff reported engaging in activities that are comparable with work at the light exertional level such as dressing and grooming himself, cooking, bathing, cleaning, and shopping. *Id.*

Plaintiff's argument that the ALJ also needed to specifically discuss the mental impairments as part of her RFC analysis also fails because the ALJ had already found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. at 28; *see also* R. at 28-29 (considering all four functional areas and finding that Plaintiff's mental impairment is "non-severe" because it "causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities"). And although an ALJ "consider[s]" both severe and non-severe impairments in assessing a claimant's RFC, 20 C.F.R. § 404.1545(a)(2), if an ALJ finds a limitation is minimal or negligible, it is not error to decline to assess a functional limitation. *See Holley v. Comm'r Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (finding where plaintiff "had—at most—minor mental impairments," the ALJ did not err when RFC included no mental limitations); *Redhead v. Berryhill*, No. 17-cv-639, 2018 WL 1911370, at *4 (W.D. Pa. Apr. 23, 2018) (finding "[t]o the extent that the ALJ omitted any restrictions in the RFC relating to depression and anxiety, the ALJ did so based upon a finding that any limitations associated with Redhead's depression and anxiety were minimal in nature"); *Makowski v. Comm'r of Soc. Sec.*, No. 16-cv-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017) ("[T]he ALJ was entitled to not include 'minimal or negligible' deficiencies in the RFC."). Thus, the ALJ was not required to include any mental functional limitations in the RFC due to the minor impact Plaintiff's mental impairments had on his functioning.

In short, the ALJ provided an appropriate rationale with specific references to the record to support her finding that Plaintiff's impairments did not prevent him from performing work within the confines of the RFC. Read as a whole, the ALJ's decision more than adequately permits

13

meaningful judicial review. *See Hess v. Comm'r Soc. Sec.,* 931 F.3d 198, 209-10 (3d Cir. 2019) (explaining that whether the ALJ provided a "valid explanation" for the residual functional capacity finding depends on the facts of the particular case).

V.    **CONCLUSION**

In sum, Plaintiff knowingly and intelligently waived his right to counsel, and the ALJ did not err in her step three analysis or her RFC determination. Therefore, the ALJ's decision is affirmed.

**Accordingly, IT IS** on this 5th day of March, 2025,

**ORDERED** that Plaintiff's appeal (ECF No. 1) is **DENIED**; and it is further

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED.**

**SO ORDERED.**

                                          */s/ Claire C. Cecchi*
                                          **CLAIRE C. CECCHI, U.S.D.J.**